UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PHILIP G. POTTER,

                Plaintiff,

       -against-                       **MEMORANDUM OF DECISION AND ORDER**
                                                Civil Action No. 23-6456 (GRB)(ARL)

INCORPORATED VILLAGE OF OCEAN
BEACH, *et al.*

                Defendants.
------------------------------------------------------------X
**GARY R. BROWN, United States District Judge:**

> **Sisyphean (adj)** - *Of or relating to Sisyphus, in Greek mythology a king of Corinth who was condemned in Hades endlessly to roll a heavy stone up a hill only for it to roll down again as he reached the top; resembling Sisyphus or that of Sisyphus; spec. (of labour, a task, etc.) resembling the fruitless toil of Sisyphus; endless, laborious, and ineffective.*
>
>                                               - Oxford English Dictionary[1]

The allegations in this action, charging purported constitutional violations against the defendant Village of Ocean Beach (the "Village") and several of its officials, comprise a tale that is nothing short of Sisyphean. The amended complaint painstakingly recounts the story of the Village's issuance and subsequent revocation of a Certificate of Occupancy, institution and dismissal of criminal proceedings related thereto, convention of a revocation hearing, rejection of rental permits based upon the absence of a Certificate of Occupancy and plaintiff's successful prosecution of a declaratory judgment action in state court. Unfortunately for plaintiff, however, this story, like the tale of Sisyphus, is an ancient one, and falls well outside the statute of limitations. Thus, the matter must be dismissed.

---

[1] *Sisyphean*, Oxford English Dictionary, https://www.oed.com/dictionary/sisyphean_adj (last visited July 9, 2024).

1

*Procedural History*

Growing out of the 2011 revocation of the subject Certificate of Occupancy by defendants, this action was commenced in this Court in August 2023 by the filing of a complaint. Docket Entry ("DE") 1. Defendants moved for a pre-motion conference in connection with an anticipated Rule 12 motion, and the parties filed letter briefs and presented arguments on January 3, 2024. DE 13. After argument, the Court deemed the motion made, and recognizing "a fundamental statute of limitations problem," the absence of allegations to support a continuing violation theory, and looming ripeness issues, dismissed the complaint, granting leave to refile within 60 days. DE 14 at 7, 15.

Plaintiff filed an amended complaint. DE 15. Defendants moved to dismiss for failure to state a claim, which has now been fully briefed. DE 19. This opinion follows.

*Factual Background*

The allegations of the amended complaint, assumed true for the purpose of this motion (though the conduct of the Village, as established through publicly accessible documents, is at times truly difficult to believe), include the following:

Plaintiff, a New York City resident, acquired a seasonal residence on Fire Island within the confines of the Village in 2009. DE 15 ¶¶ 22, 31. After obtaining a permit, he demolished the existing structure and commenced construction of a two-story wood structure that same year. *Id.* ¶¶ 32, 33. In July 2010, the Village issued a Permanent Certificate of Occupancy for the new residence. *Id.* ¶ 40.

From there, the story takes a troubling turn. The complaint alleges that in 2011, well after the issuance of the Certificate of Occupancy, the Village, at times acting through its Building Inspector:

- Falsely indicated that a final survey had not been provided until July 2011,

- Stated that the survey revealed violations of the Village's building code and required the removal of a deck,

- Altered the original Certificate of Occupancy maintained in its files by adding a handwritten "X" through the word permanent and adding the words "Void as of July 15, 2011," and

- Issued a letter indicating that the Village had revoked the Certificate of Occupancy and noted additional violations.

*Id.* ¶¶ 44-51. Then, in 2012, the Village "doubled down," issuing eight criminal informations, a criminal summons and a bench warrant for plaintiff returnable before its Village Justice Court for zoning and building violations. *Id.* ¶¶ 55-60. Faced with a motion to dismiss the charges, the Village prosecutor stated he could not, in good faith oppose that motion because "[t]he Village of Ocean Beach did issue a Certificate of Occupancy"; in 2014, Village Justice William Wexler dismissed the criminal charges, finding that the plaintiff "had a C of O." *Id.* ¶¶ 62, 63 (emphasis removed).

In June 2014, the Village commenced a "revocation hearing" concerning the subject Certificate of Occupancy, yielding a recommendation by a hearing officer that the certificate be revoked for noncompliant zoning. *Id.* ¶¶ 65-70. In 2015, that matter was "tabled subject to recall" by the Village's Board of Trustees. *Id.* ¶¶ 71-72. In 2016, 2017 and 2018, the Village denied plaintiff rental permits based upon purported zoning issues, thus denying him "potentially lucrative rental income from the property." *Id.* ¶ 77. These allegations all occurred well outside the relevant limitations period.

In 2019, plaintiff brought a declaratory judgment action in state court challenging the failure to issue a Certificate of Occupancy and arguing that the Village had validated the CO issued on July 2, 2010. DE 15-14 at 2. Notably, according to a decision issued in that matter, plaintiff argued, at that time, that defendants "failed to act in this matter for over five years." *Id.* In 2020,

3

the state court dismissed the action based upon plaintiff's failure to comply with the notice of claim requirement. *Id.* A second such action, filed the following year, was dismissed in 2021 as premature based upon "the Village Board having not made a decision as to the revocation of the petitioners' CO at this time." DE 15-15 at 3. The state court remanded the decision to the Village Board for a further determination. *Id.*

Following the dismissal of plaintiff's initial complaint in this action, plaintiff caused to be conducted a Certificate of Occupancy search, the report from which is annexed to the amended complaint. *See* DE 15-16. According to the allegations of the amended complaint, in response to the 2024 Certificate of Occupancy search, "the Village, on or about January 25, 2024, revoked the Certificate of Occupancy." DE 15 ¶ 88. Yet the report, annexed to the amended complaint, does not so indicate. Rather, the report contains an email from the current building inspector that states as follows:

> Though it appears there were several [temporary certificates of occupancy] issued and than [sic] a [permanent certificate of occupancy] issued from the multiple page document previously attached; this is a moot issue since the attached CO revocation letter dated July 15, 2011, revokes any CO that may have been issued.

DE 15-16 at 4; *see also* DE 15 ¶ 89 (repeating this text verbatim).

Based upon these allegations, plaintiff purports to set forth causes of action predicated upon violations of procedural and substantive due process in violation of 42 U.S.C. § 1983, municipal liability under *Monell,* and civil conspiracy to violate constitutional rights under 42 U.S.C. § 1985.

*Standard of Review*

The oft-repeated and well-understood standard of review for a motion to dismiss under Fed. R. Civ. P. 12(b)(6) has changed little from the first decade of this century when the Supreme Court issued its decisions in *Iqbal* and *Twombly*. My learned colleague Judge Louis Scarcella

4

recently set forth a nuanced reiteration of the standard, which follows:

> A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a)(2) "does not require detailed factual allegations, but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. A defendant may move to dismiss a complaint under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. To meet this standard, a plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." Id. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955.
>
> In ruling on a Rule 12(b)(6) motion, "the duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 113 (2d Cir. 2010) (internal citation and quotation marks omitted). Where a plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. "Applying this plausibility standard is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCall v. Chesapeake Energy Corp*., 817 F. Supp. 2d 307, 312 (S.D.N.Y. 2011) (*quoting Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937). Although all well-pleaded factual allegations in the complaint are assumed true for purposes of a motion to dismiss, *see Koch*, 699 F.3d at 145, this principle is "inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

*In re Molina*, 657 B.R. 172, 181 (Bankr. E.D.N.Y. 2023). In short, assuming the allegations of the complaint to be true and drawing inferences in favor of the plaintiff, the factual matter asserted must contain claims that are facially plausible.

*Discussion*

With respect to § 1983 claims, this Court must apply the state statute of limitations for

5

personal injury actions, which is three years under New York C.P.L.R. § 214(5). *Kane v. Mount Pleasant Cent. Sch. Dist.*, 80 F.4th 101, 107 (2d Cir. 2023) (citation omitted). To be actionable, the matters complained of must have accrued within three years prior to the filing of this action. With respect to the 2011 revocation of the Certificate of Occupancy, the seemingly ill-considered criminal charges in 2012 and the denial of rental permits in 2016 through 2018, all of these actions occurred well outside the limitations period. Though federal law provides that a claim does not accrue in absence of notice, none of the allegations suggest that the plaintiff was unaware of any of the defendants' actions for any appreciable period of time; indeed, the litigative record suggests precisely the opposite.

Thus, the only theories requiring analysis are the due process claims arising from the alleged failure of defendants to act following the 2021 state court remand to the Village to conduct a hearing as to the propriety of the revocation of the Certificate of Occupancy. To press such a claim, however, the plaintiff must allege an entitlement to right claimed. As a general matter, "federal courts should not become zoning boards of appeal to review nonconstitutional land-use determinations by the Circuit's many local legislative and administrative agencies." *Zahra v. Town of Southold*, 48 F.3d 674, 679–80 (2d Cir. 1995) (citation and internal marks omitted). As the Second Circuit explained:

> When an unsuccessful applicant for a governmental permit claims that an official or regulatory body has violated due process, the framework for evaluating the claim is the well-developed property interest analysis, which has its origins in the Supreme Court's decision in *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The focus of this analysis is on the nature of the applicant's interest in the approval being sought, specifically whether the applicant has a clear entitlement to the approval sought from the government official or administrative body. *See, e.g., RRI Realty Corp. v. Incorporated Village of Southampton,* 870 F.2d 911 (2d Cir.) (analyzing whether applicant possessed property interest in building permit), cert. denied, 493 U.S. 893, 110 S.Ct. 240, 107 L.Ed.2d 191 (1989); *Sullivan v. Town of Salem*, 805 F.2d 81, 84–85 (2d Cir.1986) (analyzing whether applicant possessed property interest in certificate of

6

> occupancy); *Yale Auto Parts v. Johnson*, 758 F.2d 54, 58–60 (2d Cir.1985) (analyzing whether applicant possessed property interest in permit to use property as automobile junkyard).
>
> In *Yale Auto Parts*, 758 F.2d at 59, we stated that a "legitimate claim of entitlement" exists where, "absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted." This test focuses on the amount of discretion committed to the issuing authority, not the estimated probability that the authority would act favorably in a particular case. *See RRI Realty*, 870 F.2d at 918. As we observed in *RRI Realty,* "[t]he 'strong likelihood' aspect of *Yale Auto Parts* comes into play only when the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured; an entitlement does not arise simply because it is likely that broad discretion will be favorably exercised." *Id.* Put another way, "[t]he fact that the permit could have been denied on non-arbitrary grounds defeats the federal due process claim." *Id.*

*Walz v. Town of Smithtown*, 46 F.3d 162, 167–68 (2d Cir. 1995).

Here, the Court is not faced with a question of, for example, the propriety of the filing of criminal charges against plaintiff (about which there has already been a significant judicial finding); rather, the issue turns on the discretion afforded the Village in the matter remanded to it in the 2021 state court decision. That discretion is described in the state court order: the matter was not remanded with directions for a particular outcome. Rather, the state court left the Village with substantial discretion in making a determination, holding only that "the matter is remitted for a public hearing before the Village Board . . . on the revocation of the CO at issue." DE 15-15 at 3.

That leaves plaintiff solely with a complaint of the failure of the Village to hold the directed hearing since the state court remand in 2021. Importantly:

> The mere existence of *procedures* for obtaining a permit or certificate do not, in and of themselves, create constitutional "property interests." Were we to hold otherwise, aggrieved property owners would be empowered to bring constitutional challenges at virtually every stage of the building process in municipalities. We expressly decline to announce a rule that would obligate federal courts to consider endless numbers of alleged "property interests" arising not from the benefits themselves, but as extensions of existing or sought property interests.

7

*Zahra*, 48 F.3d at 681.  Thus, the alleged failure of the Village to hold the hearing as directed cannot provide the basis for a due process claim.  And undoubtedly plaintiff has alternative avenues to enforce his rights through the state court system.

*Conclusion*

As the amended complaint contains solely claims that are barred by the statute of limitations or are otherwise unactionable, the motion to dismiss is GRANTED.  The Clerk shall close the case.

   **SO ORDERED.**

Dated: July 9, 2024
      Central Islip, New York

                                            /s/ Gary R. Brown
                                            GARY R. BROWN
                                            UNITED STATES DISTRICT JUDGE